```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
     CHARLOTTE DIVISION
       3:19-cv-00465-GCM
```

| | |
|---|---|
| CALVIN LATIMER, | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) |
| NORTH CAROLINA DEPARTMENT | )    **ORDER** |
| OF TRANSPORTION, | ) |
| | ) |
| | ) |
|       **Defendant.** | ) |

**THIS MATTER** is before the Court initial review of Plaintiff's Pro Se Complaint [Doc. 1], Plaintiff's motion to proceed in forma pauperis [Doc. 2]; and Plaintiff's Pro Se "Motion for Memorandum and Recommendation [Doc. 3].

**I.**    **BACKGROUND**

On September 19, 2019, Plaintiff Calvin Latimer ("Plaintiff") filed a Pro Se Complaint against Defendant North Carolina Department of Transportation ("DOT"). [Doc. 1]. Plaintiff's Complaint consists of a compilation of a disorganized series of events from 1993 to 2016. Plaintiff baldly states the following as "reasons" for his Complaint: (1) Map Act rescinded 7-12-16, (2) dealing with illegal behavior, (3) violation of property rights, (4) failure to follow due process, (5) eminent domain acquisition, (6) in violation of the 14th Amendment, (7) civil rights, (8) 14th Amendment, (9) human rights, (10) conspiracy, and (11) wrongful death. [Doc. 1 at 1]. In giving the Plaintiff the benefit of every reasonable inference, it appears as best as the Court can discern, Plaintiff claims relate to the following events:

In 1987, the Map Act was enacted.[1] In 1993, an "invasion" occurred at Plaintiff's undefined property to which the police responded. [Id. at 5]. The day after the invasion the Plaintiff's wife had a miscarriage. [Id. at 53]. On or around June 5, 1995, an Order was entered by the Honorable Marvin R. Wooten, United States Bankruptcy Judge for the Western District of North Carolina, converting Plaintiff's bankruptcy from one under Chapter to 7 to one under Chapter 13. It appears these proceedings were made on behalf of Plaintiff's business, Miracle Cleaners, located at 2229 Tryon Road (hereinafter Plaintiff's "Tryon Property") [Id. at 58-9].

Sometime before September 22, 2000, Plaintiff's Tryon Property, including equipment located inside, sustained fire damage. [See id. at 39-40]. On or about September 22, 2000, the Mecklenburg County Engineering and Building Standards issued a Land Development Surety Bond in the name of Plaintiff as the principal and Hartford Fire Insurance Company as the surety. [Id. at 39]. On or about September 28, 2000, a commercial permit was issued to "replace fire damage to roof replace as built no extensions or additions." [Id. at 40]. In or around October 2000, Plaintiff contacted the Charlotte City Attorney's Office regarding options to reconstruct his building after the fire. [Id. at 38]. Plaintiff was advised regarding the limitations imposed by the traditional setback that would apply if he were to tear down the structure and rebuild. [Id.].

An undated Notice of Lien filed in the Superior Court of Mecklenburg County reflects that demolition services were furnished on February 22, 2001 and finished on May 29, 2001 at Plaintiff's Tryon Property. [Id. at 51]. The lien placed on Plaintiff's Property by the City of

---

[1] The Map Act, N.C. Gen. Stat. §§ 136-44.50, et seq., gave the DOT the authority to record a corridor map for planned future highways. A landowner whose property fell within the boundaries of a corridor map was precluded from improving, developing, or subdividing their property for an indefinite period, but was not compensated as a landowner would be through the exercise of eminent domain. See Kirby v. North Carolina Department of Transportation, 368 N.C. 847, 786 S.E.2d 919 (2016).

Charlotte for these services was in the amount of $14,219.50, with a 12% interest rate per year. [Id.; see Doc. 1 at 55-57]. It appears the building was torn down against Plaintiff's will after it was not repaired or replaced after the fire. [Id. at 54]. Plaintiff alleges that "in 2001" he saw a sheriff "with his rifle out," presumably at the Tryon Property. The sheriff was "attending the man driving the bull dozier [*sic*]," who presumably was demolishing Plaintiff's Tryon Property. [Id.]. Plaintiff states that he had a repair permit issued and, therefore, believes the sheriff's "demolition paper" was illegal. [Id.]. Plaintiff states he was out driving at the time and "could have met them anytime. That also, was part of the Map Act behavior." [Id.]. The documents Plaintiff submitted also reflect that some sort of asbestos removal was performed at the Tryon Property in or around February 2001. [See id. at 47-8]. Plaintiff prepared a list of "Equipment Destroyed by Demolition," which appears to be dated April 15, 2001 and April 28, 2001. [Id. at 44].

On or about August 7, 2008, Plaintiff requested that the City reduce its lien total and taxes owed on Plaintiff's Tryon Property. The City responded to the Plaintiff's request by letter with a counterproposal on September 5, 2008. [Id. at 50]. Handwritten notes on this letter state: "under duress, which is illegal this attempt to take land only???" and "No liens was on the property??? Only land, the building was torn down in 2001. ???" [Id.].

On or about April 14, 2009, Plaintiff called the City Attorney's Office regarding an alleged breach of a purchase contract for Plaintiff's Tryon Property. [Id. at 52]. The next day, an Assistant City Attorney wrote the Plaintiff a letter, which states, "As I mentioned, the City will not become involved in a dispute solely between private parties. Accordingly, the City will not offer to serve as a mediator or a 'go between' for the parties." [Id.].

Plaintiff further alleges that the Map Act was rescinded on July 12, 2016, which

3

"restored, the Constitution to it [*sic*] rightful place." [Id. at 13]. It appears the onus of Plaintiff's Complaint is based on the following allegation:

> [Eminent domain] was exchange with the Map Act, that was later determined to be illegal. In 7-12-16. Therefore, Case Defendant, tries to indicate, that zonning created the error. Zonning, is a product of the State not the Federal Government. In conclusion is that the Map Act alone with zoning DID the illegal damages listed.

[Id. at 14 (grammatical and spelling errors uncorrected)]. Plaintiff, however, does not allege that his Tryon Street property was actually taken under the auspices of the Map Act.

For damages, Plaintiff seeks $1.3 million in compensatory damages related to the loss of his property, equipment, and income, and $200,000 for pain and suffering for the loss of his unborn child. [Doc. 1 at 2].

## II. MOTION TO PROCEED IN FORMA PAUPERIS

Plaintiff's affidavit shows that Plaintiff has received an average monthly income of $1,313.00 during the past twelve months, which is from disability benefits, and that he expects to receive $1,313.00 in income next month. [Doc. 2 at 1-2]. Plaintiff reports total monthly expenses in the amount of $1,231.00. [Id. at 4-5]. Plaintiff reports having $25.00 in cash and no money in any bank account. [Id. at 2]. Plaintiff also reports having no assets and no one who relies on him for support. The Court is satisfied that Plaintiff does not have sufficient funds with which to pay the filing fee. Therefore, Plaintiff's motion to proceed in forma pauperis will be granted for the limited purpose of this Court's initial review of Plaintiff's Complaint.

## III. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). In its frivolity review, this Court must determine whether the Complaint raises an indisputably

meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**IV. DISCUSSION**

Plaintiff seeks remuneration from the DOT related to what appears to be an alleged taking of his Tryon Property in Charlotte, North Carolina, without compensation. The Plaintiff has alleged neither diversity of citizenship nor federal question jurisdiction exists to support jurisdiction in this federal court. See 28 U.S.C. §§ 1331, 1332. For purposes of diversity of citizenship under 28 U.S.C. § 1332, it appears that Plaintiff is a citizen of Florida[2] and Defendant is an agency of the State of North Carolina. Further, Plaintiff seeks damages well above the $75,000 threshold for diversity case.

Here, the Court is constrained to find that the Plaintiff has failed to state a claim upon which relief can be granted. Although the Plaintiff references to the Map Act, which was repealed after the North Carolina Supreme Court's decision in Kirby, the Plaintiff makes no allegation that his property fell within a recorded highway corridor, in the first place. Furthermore, the evidence Plaintiff presents in his Complaint tends to show that Plaintiff's real dispute is with the zoning issues he encountered in deciding whether to rebuild the structure, the demolition of his fire-damaged property in early 2001 at the direction of the City of Charlotte,

---

[2] Plaintiff has failed to affirmatively allege his state of residence in his Complaint. In the IFP motion submitted with Plaintiff's Complaint, Plaintiff identifies his city and state of legal residence as Port Richey, Florida. [Doc. 2].

and the resultant demolition lien that was placed on his property. Any claims Plaintiff might have relative to this demolition have long since expired.

Furthermore, to the extent that Plaintiff is asking this Court to review the propriety of an eminent domain action that proceeded in state court, this action is barred by the Rooker-Feldman doctrine, which bars federal courts from sitting "in direct review of state court decisions." District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462, 482-84 (1983). See also Curley v. Adams Creek Assocs., 409 Fed. App'x 678, 680 (4th Cir. 2011) (holding that Rooker-Feldman precluded subject matter jurisdiction over plaintiff's claim that the state court violated her due process rights by failing to give her notice before disposing of real property owned by her).

The Court also notes that any claims Plaintiff may have had relative to the alleged 1993 "invasion" of his property and the loss of an unborn child are also time barred.

In sum, for the reasons stated herein, the Court will dismiss this action.

## V. CONCLUSION

For the foregoing reasons, the Plaintiff's Complaint is dismissed.

**IT IS THEREFORE ORDERED** that:

(1) The Plaintiff's motion to proceed in forma pauperis [Doc. 2] is **GRANTED**.

(2) The Plaintiff's Complaint [Doc. 1] is hereby **DISMISSED** without prejudice.

(3) The Plaintiff's Pro Se Motion for Memorandum and Recommendation [Doc. 3] is **DENIED** as moot.

(4) The Clerk is instructed to terminate this action.

Signed: October 24, 2019

Graham C. Mullen
United States District Judge